BOLIN, Judge.
Plaintiffs, alleging themselves to be owners and holders in due course of a mortgage note executed by eight individuals on behalf of New Hope Baptist Church No. One instituted a suit for the principal amount thereof, plus interest and attorney’s fees and for recognition of the mortgage. From judgment in plaintiffs’ favor and against the church, New Hope Baptist Church has appealed. No judgment was rendered against the individuals and since plaintiffs have neither appealed nor answered the appeal, the only issue before the court is the correctness of the ruling assessing liability against the church.
Our review of the record reflects the following facts: In legal terminology, New Hope Baptist Church No. One is an unincorporated religious society. In layman’s language, we would say it is an ordinary small, North Louisiana, country, Negro Baptist Church. It was organized many years ago, and .in 1959 had approximately 125 members. Nine of these members calling themselves the official Secretary and Deacons of the church got together and decided they would renovate and rebuild the sanctuary. They contacted L. T. Farley, a building contractor, to do the work. They paid him some $800, which apparently depleted the cash assets of the church, and agreed to pay him an additional $4,000 for extensive repairs.
In order to insure the payment of this amount, Mr. Farley insisted these persons give him a first mortgage on the church property. As there were no by-laws of the church, Mr. Farley prepared a typewritten instrument entitled “Revised Copy — Set of By-Laws of New Hope Baptist Church No.' 1, Hanna, Red River Parish, Louisiana”, which was signed by O. B. Taylor on August 11, 1959, wherein Taylor certified he was the secretary and set forth rúles of the church, among them being:
“The Board of Deacons shall have full authority to authorize the Purchase of Equipment or enter into any transaction for the betterment of New Hope Baptist Church #1, when authorized by and at any special meeting of the members after a given notice of such intention.”
Taylor testified these were not the by-laws and in truth and fact the organization had no by-laws; that this typewritten form was signed by him at Farley’s insistence in order to get the repair work started.
Plaintiffs also introduced an alleged extract of minutes reflecting a “Special Resolution” purporting to give authority to the nine men to execute the mortgage and note to Farley on behalf of the church. This extract showed a meeting of the church was held at the church building on a certain date “pursuant to due notice, at which a quorum was present, on notice * * * ” This alleged extract was signed by O. B. Taylor as secretary and the other eight members. According to the testimony no such meeting was ever held, at least not by anyone other than the nine members apparently calling themselves the Church.
In any event, after Farley received the mortgage and note and had done only a few *648 hundred dollars worth of work on the church, he contacted Mr. and Mrs. Barrett in order to borrow $1200. He agreed to give them a promissory note for $1380 and also to transfer the mortgage note from the church to them as security for the loan. After making some investigation as to the validity of the church note and mortgage, the Barretts took the promissory note from Farley for $1380 which provided it was to be paid in full before 60 days and “failure to pay this note in full at that time forfeits all collateral submitted with this note.” As security Farley transferred the $4,000 church mortgage note to them; the latter being a “Myself” note endorsed in blank, the negotiation was done by simple transfer or manual delivery. Shortly thereafter Farley absconded and defaulted on his obligation to plaintiffs and the church. At the time of trial his whereabouts were unknown.
The lower court rendered judgment in plaintiffs’ favor for the full amount of the mortgage note and against the church on the theory that plaintiffs were holders in due course of the mortgage note; that the eight individuals had at least apparent authority to bind the church and therefore neither lack of actual authority nor any other defenses could be urged against a holder in due course.
LSA-R.S. 7:52 provides:
“A holder in due course is a holder who has taken the instrument under the following conditions:
“(1) That it is complete and regular upon its face;
“(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact ;
“(3) That he took it in good faith and for value;
“(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”
As related to the quoted statute, the lower court found:
* * * “Plaintiffs satisfy all of the above requirements and qualify as holders in due course.” * * *
We agree with this portion of the lower court’s finding.
As to the right of a holder in due course, LSA-R.S. 7:57 provides:
“A holder in due course holds the instrument free from any defect of title of prior parties, and free from defences available to prior parties among themselves, and may enforce payment of the instrument for the full amount thereof against all parties liable thereon.” (Emphasis supplied by the court.)
New Hope Baptist Church does not seriously dispute plaintiffs are holders in due course but it does strenuously deny it ever incurred any liability under the instrument. Whether the entity known as New Hope Baptist Church No. One as contradistin-guished from the nine individuals purporting to act in its name, incurred any initial liability is the paramount question before the court. We have not been cited to any direct statute or cases on the subject, however, by analogizing we have satisfied ourselves as to the methods by which such an unincorporated religious society may become bound. In Patterson v. Baptist Church (La.App. 2 Cir., 1928) 8 La.App. 109, this court said:
“Defendant is an unincorporated religious society without by-laws.
“There is no evidence in the record that the persons assuming to act as its board of trustees had ever been elected as such by the members of the society or that the congregation had ever authorized them to acknowledge the debt and execute the notes and mortgage or had ratified their acts in doing so; and in the absence of such evidence their *649 acts were unauthorized and the notes and mortgage void.
“An unincorporated society can only legally act through a majority of its members.
“But plaintiff insists that inasmuch as the debt sued for enured to the benefit of defendant it is estopped to question the validity of the notes and mortgage. But defendant cannot be estopped to repudiate the unauthorized acts of persons assuming to act for it, except by the acts of a majority of its members.”
Also we note the following language from the case of Rock Zion Baptist Church v. Johnson, et al. (La.App. 1 Cir., 1950) 47 So. 2d 397:
“The rule of law with reference to disposition of real estate belonging to an unincorporated association is that such disposition must be pursuant to a resolution duly adopted by the membership of'Such association in accordance with its constitution and by-laws, or the conveyance must be signed by each and every member of the association. The defendants have failed to show the authority by which the Board of Deacons acted.”
We think the following from 10 C.J.S. Bills & Notes § 506a, p. 1113, is also pertinent:
“A defense that a negotiable instrument was never a valid contract because of a party’s legal incapacity is available against any holder.”
The record does not contain any evidence that anyone except these nine members ever had anything to do with the building contract or the negotiable instrument sued on. The record satisfies us these individuals, through Farley’s guidance, manipulated and handled the entire transaction. The only people who testified relative to the transaction were O. B. Taylor, the alleged secretary of the church, and Ramie McIntyre, an alleged deacon. It was stipulated several other witnesses who were available, if called to testify, would corroborate the testimony of McIntyre. The essence of this testimony is that the church had a membership of 125 persons at the time; that it had no by-laws; that no other members of the congregation, except the nine members in question, had ever been notified of any meeting, that no such meeting was held; that the membership had never in any way authorized or ratified the execution of this note and mortgage.
The record convinces us the mortgage and note sued on are absolute nullities insofar as they purport to bind New Hope Baptist Church No. One. As the rights flowing to a holder in due course of a negotiable instrument can never go beyond “all parties liable thereon” (LSA-R.S. 7:57, cited supra), it follows such nullity is a valid defense to plaintiffs’ action.
The judgment appealed from is reversed and set aside and there is now judgment rejecting plaintiffs’ demand against New Hope Baptist Church No. One, all costs to be assessed against appellees.
Reversed.